IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| MARSHALL BATCHELOR | * | CIVIL ACTION NO. 07-1623 |
|---|---|---|
| VERSUS | * | JUDGE ROBERT G. JAMES |
| WARDEN BURL CAIN | * | MAGISTRATE JUDGE<br>KAREN L. HAYES |

### REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus, 28 U.S.C. § 2254, filed on
September 26, 2007, by pro se petitioner, Marshall Batchelor.  Docs. # 1, 7.  Petitioner is an
inmate in the custody of the Louisiana Department of Public Safety and Corrections.  He is
incarcerated at David Wade Correctional Center in Homer, Louisiana where he is serving a sixty
year sentence following a 1987 conviction for armed robbery.  The matter was referred to the
undersigned for review, report, and recommendation in accordance with the provisions of 28
U.S.C. § 636 and the standing orders of the court.  For reasons assigned below, it is
recommended that the petition (docs. # 1, 7) be **DENIED**.

### BACKGROUND

On June 22, 1998, Batchelor and two associates - Nakia Brown and Joseph Tyrone
Henton - attacked Brett Peeples, a pizza delivery man, and took his money and car.  Batchelor
was originally charged with armed robbery, purse snatching, aggravated battery, and car jacking
of a pizza delivery man.  He was convicted of armed robbery following trial by jury on December
1, 2000, and was sentenced to serve sixty years at hard labor on January 22, 2001.  On appeal,
Batchelor's court-appointed appellate counsel argued two assignments of error - (1) insufficiency

of the evidence; and (2) excessiveness of sentence.  *See* doc. # 6 at 1.  In a pro se brief, Batchelor

argued that he was denied his right to self-representation under *Faretta v. California*.  *See id.* at

1-2.  On May 10, 2002, a three judge panel of Louisiana's Second Circuit Court of Appeals

reversed the conviction, ruling that Batchelor was indeed denied his right to self-representation

under *Faretta*.  *State of Louisiana v. Batchelor*, 823 So. 2d 367 (La. Ct. App. May 10, 2002).

However, after the State successfully moved for rehearing, a six-judge panel of the Louisiana

Second Circuit affirmed Batchelor's conviction and sentence.  *State of Louisiana v. Batchelor*,

No. 35,478-KA, 2002 La. App. LEXIS 2398 (La. Ct. App. July 24, 2002).

On August 23, 2002, Batchelor filed a pro se application for writs of *certiorari* and/or

review in Louisiana's Supreme Court, arguing a single claim - denial of the right of self-

representation.  Doc. # 7 at 20-24.  On August 24, 2002, Batchelor's court-appointed appellate

counsel filed a writ application arguing claims of sufficiency of the evidence and violation of the

right to self-representation.  *Id.* at 5-19.  On March 14, 2003, and again on October 3, 2003,

petitioner's writ applications were denied.  *State of Louisiana v. Batchelor*, 839 So.2d 32 (La.

2003); *State ex rel. Bachelor v. State of Louisiana*, 855 So.2d 299 (La. 2003).  The Court denied

writs in the former case without comment; in the second case, the Court denied writs having

found the claim "repetitive" under LA. CODE CRIM. PROC. ANN. art. 930.4(A).

On June 22, 2004, Batchelor filed a pro se application for post-conviction relief in

Louisiana District Court.  He explicitly set forth the following claims for relief: (1) untimely

prosecution; (2) the prosecutor solicited false testimony from its witness; (3) he was denied the

effective assistance of counsel because his trial attorney labored under several conflicts of

interest; and (4) the state obtained a statement from him in violation of his rights under *Miranda.*

Doc. # 7 at 27-48.  Furthermore, embedded within Batchelor's false testimony claim was an argument that the evidence the state presented at trial was insufficient to support a conviction of armed robbery.  *Id.* at 38-41.  On September 2, 2004, Batchelor filed a supplemental application in Louisiana District Court in which he requested pretrial, trial, and post-trial transcripts, and also asserted the additional claim (5) that he was denied the effective assistance of counsel because of his attorney's heavy caseload.  Doc. # 7 at 51-53.

On September 24, 2004, the district court denied relief.  The court stated that Batchelor's untimely prosecution, false testimony, and conflict of interest claims had been "litigated on appeal" and were therefore denied for being "repetitive."  *Id.* at 56.  The court denied Batchelor's *Miranda* claim because Batchelor had "inexplicably failed to raise this issue at trial or on appeal."  *Id.*

On October 21, 2004, Batchelor applied for writs to the Louisiana Second Circuit Court of Appeals.  He argued that the district court erred when it dismissed his *Miranda* claim for not being raised on appeal without giving him an opportunity to explain his default.  *Id.* at 59. Batchelor also argued the merits of the claims he raised in his post-conviction petitions to the district court.  *Id.* at 60-72.

On December 22, 2004, the Second Circuit granted writs and remanded the case to the district court and instructed the court to comply with the provisions of LA. CODE CRIM PROC. ANN. art. 930.4(F).  Specifically, the court stated,

> This record shows that the trial court erred in finding that the claims regarding timeliness of the trial, the prosecutor's knowledge of allowing perjured testimony and the trial attorney's conflict of interest had been previously considered on appeal. Further, the trial court erred in denying the claim regarding a *Miranda* warning violation on the grounds that it was not previously raised on appeal since

> it did not first comply with the provisions of La. C.Cr.P. art. 930.4.F. . . . Further,
> it appears that the applicant raised a new issue, request for transcripts, in a
> supplemental brief.  The trial court is ordered to review that claim and rule on the
> matter, if it has not already done so.

*State of Louisiana v. Marshall T. Batchelor*, No. 39715-KH (La. Ct. App. Dec. 22, 2004); Doc. #
7 at 76.

On December 15, 2005, Batchelor filed an application for writ of mandamus to effectuate

the Second Circuit's order of remand.  Doc. # 7 at 98-102.  On February 9, 2006, the Second

Circuit granted Batchelor's application for mandamus and directed the district court to convene a

hearing on or before February 28, 2006.  *Id.* at 103-04.

On February 16, 2006, the district court convened a hearing and denied Batchelor's

application for post-conviction relief stating,

> Well, the Court has thoroughly reviewed the entire record in this matter. And I
> find that the issues of timeliness, of the suspect testimony of witnesses, alleged
> conflict of interest with the attorneys, and even the *Miranda* warnings were
> discussed at various phases throughout the prosecution. The defendant was aware
> of the issues and the record was there for the appellate counsel also. The appellate
> counsel even alluded to most of those issues in his arguments before the appellate
> courts even though the issues were not squarely before the appellate tribunal. I
> therefore find that there is no excuse for those issues, those claims to have not
> been made at the appellate level, and find that the mover, Marshall Batchelor, is
> procedurally barred from filing his post conviction relief claim. And I dismiss the
> claim based on the procedural grounds.

Doc. # 8 at 9-10.

While the district court addressed the four named claims in Batchelor's state court petition, it did

not address petitioner's insufficiency of the evidence argument.

On March 13, 2006, Batchelor filed a petition for writ of review in the Second Circuit.

Doc. # 7, Ex. 1 at 2-27.  On September 21, 2006, the Second Circuit denied writs stating in part,

> This application complains of the trial court's denial of consideration of his claims
> based on procedural grounds, i.e., the applicant's inexcusable failure to raise these
> claims at an earlier state of the proceedings. In this case, the claims, though known

4

to the applicant, were not raised on appeal by his appointed counsel.

After a belated hearing pursuant to a December 22, 2004, writ grant and remand order, the trial court conducted a proceeding in open court with the applicant present. The applicant, who was not under oath, gave his reasons for not having raised the claims earlier, primarily urging that his appellate lawyer did not want to raise the particular claims asserted.

The trial court was not required to appoint counsel to assist the applicant in asserting his excuse for defaulting on his claims on appeal, especially so when the trial court merely accepted and considered an unsworn statement by the applicant, and thus did not abuse its discretion by not appointing counsel under La. C.Cr.P. art. 930.7B.

We have reviewed the transcript attached and find no error in the trial court's denial of relief based on the inexcusable failure to raise these claims in an earlier stage of the proceedings. Although the trial court based its denial of relief on procedural grounds, it also obliquely indicated that the claims urged were conclusory and appeared to be meritless. To the extent that the trial court based the denial of relief on the quality of the showing made on the merits, we also find that it did not err in denying relief.

*State of Louisiana v. Marshall T. Batchelor*, No. KH 06-41788 (La. Ct. App. Sept. 21, 2006); Doc. # 7, Ex. 1 at 28-29.

Like the district court's opinion, the Second Circuit's opinion did not address Batchelor's

insufficiency of the evidence argument.

On October 20, 2006, Batchelor filed a writ application with the Louisiana Supreme

Court.  Doc. # 7, Ex. 1 at 31- 55.  That Court denied writs on August 15, 2007.  *State of*

*Louisiana ex rel. Marshall T. Batchelor v. State of Louisiana*, 961 So.2d 1159 (La. 2007).

Batchelor signed and mailed his federal habeas corpus petition on September 24, 2007.

Doc. # 1.  He supplemented his petition on January 17, 2008.  Doc. # 7.  In his petitions, he

explicitly argued the following five claims for relief: (1) untimely prosecution under LA. CODE

CRIM. PROC. ANN. art. 578(2); (2) the state knowingly used perjured testimony to secure his

armed robbery conviction; (3) he was denied the effective assistance of counsel because his

attorney labored under an actual conflict of interest; (4) the state obtained a statement from him

in violation of his rights under *Miranda*; and (5) the state violated his right to self-representation.

Doc. # 1, Ex. 2 at 9-23.  Furthermore, petitioner embedded (6) an insufficiency of the evidence

claim within his false testimony claim, just as he did in his petition for state post-conviction

relief.  *Id.* at 10-14.

On March 10, 2008, the undersigned ordered Batchelor to demonstrate that review of

claims 1-4 in his federal habeas petition was not procedurally barred.  Doc. # 9 at 6.  On

December 15, 2009, the undersigned held an evidentiary hearing on Batchelor's claims.  Doc. #

55.  Briefing is complete and the matter is now ripe.

## LAW AND ANALYSIS

### I. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA) of 1966, 28 U.S.C. §

2254, governs habeas corpus relief.  The standard of review is set forth in 28 U.S.C. § 2254(d):

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim -
>
> > (1) resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in the
> > State court proceeding.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a

conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the

state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal habeas courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e).

## II. Procedural Default

The state contends, and Batchelor disputes, that review of all six of Batchelor's claims is procedurally barred on the basis of the independent and adequate state ground doctrine. That doctrine provides that "a claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision." *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001).

 "A state ground is independent if the last reasoned state court opinion clearly and expressly indicates that its judgment is independent of federal law." *Reed v. Scott*, 70 F.3d 844, 846 (5th Cir. 1995). A state ground is adequate "only if it was firmly established and regularly followed" at the time it was applied. *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1977).

However, "a state fails to strictly or regularly apply a procedural bar only when the state clearly and unequivocally excuses the procedural default." *Id.* Finally, the petitioner bears the burden of demonstrating that the state has failed to apply the relied-upon state ground to claims "identical or similar to those raised by the petitioner himself." *Id.*

Furthermore, even if a state court judgment rests on an independent and adequate state rule of procedural default, a federal court may nevertheless review the defaulted claim if the petitioner either shows "cause" for the default and "prejudice attributed thereto" or that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Alba v. Thaler*, No. 09-70005, 2009 U.S. App. LEXIS 22263, at *8 (5th Cir. Oct. 8, 2009).

To establish cause for a procedurally defaulted claim, the petitioner must show that "some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (U.S. 1986). "Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel." *Romero v. Collins*, 961 F.2d 1181, 1183 (5th Cir. 1992).

To establish prejudice for a procedurally defaulted claim, the petitioner must first demonstrate that the claim arises out of an error committed at trial. *See Murray*, 477 U.S. at 493. The petitioner must then show "not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982)

8

(emphasis in original).  The petitioner cannot establish prejudice for a procedurally defaulted claim when the record includes overwhelming evidence of guilt.  *See Wainwright v. Sykes*, 433 U.S. 72, 90 (1977).

Finally, the fundamental miscarriage of justice exception is limited to claims of actual innocence.  *Alba v. Thaler*, 2009 U.S. App. LEXIS 22263 at * 8.  To demonstrate that he is actually innocent, a petitioner must show "a fair probability that, in light of all the evidence, including that . . . evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt of his guilt."  *Bagwell v. Dretke*, 372 F.3d 748, 757 (5th Cir. 2004).  Thus, the miscarriage of justice exception "is concerned with actual as compared with legal innocence."  *Callins v. Johnson*, 89 F.3d 210, 213-14 (5th Cir. 1996).

As an initial matter, the undersigned finds that review of Batchelor's *Faretta* and insufficiency of the evidence claims is not procedurally barred on the basis of the independent and adequate state ground doctrine or any other doctrine.  The independent and adequate state ground doctrine does not bar review of the two claims because the Louisiana Second Circuit Court of Appeal - the last state court to provide a reasoned opinion in Batchelor's case - did not even consider the claims.  Furthermore, Batchelor satisfied the exhaustion requirements for purposes of § 2254 with respect to both of these claims because he raised both claims on direct appeal.  *See Whippler v. Balkcom*, 342 F.2d 388, 390 (5th Cir. 1965) ("A habeas applicant who has sought direct review of his conviction (including all the constitutional issues raised in his petition) in the highest state court, even though he has sought neither certiorari in the United States Supreme Court nor collateral review in any state court, has exhausted his state remedies.").

9

As previously stated, the Louisiana Second Circuit considered four of the claims that Batchelor raised in his state petition for post-conviction relief - untimely prosecution, false testimony, conflict of interest, and *Miranda* violation.  In denying relief on all of these claims, the court stated that it found "no error in the trial court's denial of relief based on the inexcusable failure to raise these claims in an earlier stage of the proceedings."  *State of Louisiana v. Marshall T. Batchelor*, No. KH 06-41788 (La. Ct. App. Sept. 21, 2006); Doc. # 7, Ex. 1 at 28-29. The state appellate court therefore found that petitioner's claims were procedurally defaulted under LA. CODE CRIM PROC. ANN. art. 930.4(C), which provides, "If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief."[1]

In denying Batchelor's claims on the basis of article 930.4(C), the state clearly relied on

---

[1] The undersigned notes that the Louisiana Second Circuit Court of Appeals also stated,

> Although the trial court based its denial of relief on procedural grounds, it also obliquely indicated that the claims urged were conclusory and appeared to be meritless. To the extent that the trial court based the denial of relief on the quality of the showing made on the merits, we also find that it did not err in denying relief.

Doc. # 7, Ex. 2 at 28-29.

The state appellate court therefore denied petitioner's claims both procedurally and on the merits.  The Fifth Circuit has held that "when a state court bases its decision upon the alternative grounds of procedural default and a rejection of the merits, a federal court must, in the absence of good 'cause' and 'prejudice,' deny habeas relief because of the procedural default."  *Hughes v. Dretke*, 412 F.3d 582, 592 (5th Cir. 2005) (citation omitted).  Accordingly, this court will analyze the Second Circuit's ruling as resting on the procedural default.  However, the undersigned does not construe *Hughes* as requiring this court to jump immediately to the "cause and prejudice" determination under the independent and adequate state ground doctrine while skipping a determination of the adequacy of article 930.4(C) as to each of Batchelor's claims.  *See Williams v. Cain*, No. 05-0710, 2008 U.S. Dist. LEXIS 109099 (E.D. La. July 16, 2008) (federal habeas court reviewed the adequacy of a state procedural rule when the state court denied relief on the basis of the procedural rule as well as on the merits of the petitioner's claims).

10

an "independent" state ground.  "A state ground is independent if the last reasoned state court opinion clearly and expressly indicates that its judgment is independent of federal law."  *Reed v. Scott*, 70 F.3d at 846.  This finding, however, does not end our inquiry, as article 930.4(C) must also be an "adequate" state ground for the independent and adequate state ground doctrine to serve as a procedural bar to this court's review of Batchelor's claims.  This court will now consider whether article 930.4(C) serves as an adequate state ground for denying the four previously mentioned claims.  The court will then consider whether Batchelor has successfully invoked either the cause and prejudice or fundamental miscarriage of justice exceptions to the independent and adequate state ground doctrine on any of these claims.

### A. Adequate State Ground Analysis

#### 1. Untimely Prosecution Claim

In order to demonstrate that Louisiana courts did not regularly apply article 930.4(C) to untimely prosecution claims at the time of the Louisiana Second Circuit's opinion, and therefore that the court relied upon an inadequate state ground for denying his untimely prosecution claim, *see Stokes*, 123 F.3d at 860, Batchelor cites four cases in which Louisiana courts allegedly refrained from applying article 930.4(c) to untimely prosecution claims.  Doc. # 10 at 1.

However, a review of these four cases does not substantiate Batchelor's claim.  Indeed, two of the four cases do not deal with claims "identical or similar to those raised by the petitioner himself."  *See Stokes*, 123 F.3d at 860.  The petitioners in *Craig v. Cain*, No. 00-1076, 2000 U.S. Dist. LEXIS 20655 at *11 (E.D. La. Aug. 1, 2000) and *Parker v. Cain*, No. 07-1180, 2007 U.S. Dist. LEXIS 80431 at *9 (E.D. La. Oct. 2, 2007) did not raise substantive untimely prosecution claims, but rather alleged that their attorneys were ineffective for failing to move to quash the bill

11

of information based on untimely prosecution.  In contrast, *Rochelle v. Wilkinson*, No. 07-0939, 2007 U.S. Dist. LEXIS 79717, at *3-8 (W.D. La. Sept. 26, 2007) involved an untimely prosecution claim, but the petitioner in that case raised the claim in his petition for state post-conviction relief after pleading guilty, thus rendering article 930.4(C), which applies to claims that a petitioner failed to raise on appeal, irrelevant to the state post-conviction court's analysis. Finally, the last case that Batchelor cites, *Desalvo v. Cain*, No. 01-0172, 2002 U.S. Dist. LEXIS 16154 (E.D. La. Jan. 7, 2002), is similar to the case at hand in that it involves a petitioner who raised his untimely prosecution claim for the first time in his petition for state post-conviction relief.  Rather than dismiss the claim on the basis of article 930.4(C), the state court dismissed the petitioner's claim on the merits.  *Id.* at *28-30.  However, the case does not support Batchelor's contention that Louisiana courts do not regularly apply article 930.4(C) to untimely prosecution claims because nothing in the case indicates that the state post-conviction court "clearly and unequivocally excused the procedural default."  *Stokes*, 123 F.3d at 860.

Based on the foregoing discussion, the undersigned finds that Batchelor has failed to demonstrate that Louisiana state courts do not regularly apply article 930.4(C) as a procedural bar to untimely prosecution claims.  Accordingly, the state court relied on an independent and adequate state ground in denying Batchelor relief on his untimely prosecution claim.

### 2. False Testimony

In his state habeas petition, Batchelor argued for the first time that the prosecution knowingly solicited perjured testimony from eyewitnesses Annie and Theodore McGowan. Upon being ordered by this court to demonstrate that article 930.4(C) is an inadequate state ground that does not bar this court's review of his false testimony claim, Batchelor did not cite

any cases in support of this proposition or challenge the adequacy of article 930.4(C) as a procedural bar in any other manner.  Batchelor instead contends that the Louisiana Second Circuit misapplied article 930.4(C) in denying his false testimony claim because he could not have successfully raised this claim on appeal, as no contemporaneous objection to the McGowans' testimony was made at trial.[2]  Doc. # 15 at 2.  *See Rodriguez v. Cain*, No. 06-815, 2007 U.S. Dist. LEXIS 92696, at *56 (E.D.La. Dec. 17, 2007) ("[W]hen state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that bar.").

Courts apply a cause and prejudice test similar to the cause and prejudice exception to the independent and adequate state ground doctrine where, as here, a habeas petitioner failed to challenge an alleged error both during trial and on appeal.  "To obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains."  *Frady*, 456 U.S. at 167.  Accordingly, this test is identical to the cause and prejudice exception to the independent and adequate state ground doctrine, with the exception that this test also evaluates the reason a habeas petitioner failed to make a contemporaneous objection during trial.  This court will therefore decide whether Batchelor's false testimony claim is procedurally barred when it determines whether Batchelor has invoked the cause and prejudice exception to the independent and adequate state ground doctrine.

---

[2] Under Louisiana's contemporaneous objection rule, "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of its occurrence." LA. CODE CRIM. PROC. ANN. art. 841.  Moreover, this rule "applies to claims that the prosecutor used perjured testimony."  *State v. Jackson*, 979 So.2d 678, 683 (La. Ct. App. 2008).

13

### 3. Conflict of Interest

Like his untimely prosecution and false testimony claims, Batchelor raised his conflict of interest claim for the first time in his state habeas petition.  The Louisiana Second Circuit denied this claim on the basis of article 930.4(C).

The state appellate court's reliance on article 930.4(C) does not bar this court's review of Batchelor's conflict of interest claim, which is a specific type of ineffective assistance of counsel claim.  Since "the appropriate avenue for asserting a claim for ineffective assistance of counsel is through postconviction relief, not by direct appeal," *State v. Truitt*, 500 So. 2d 355, 359 (La. 1987), article 930.4(C) is an inadequate state ground for denying relief in the context of ineffective assistance of counsel claims.  *Bell v. Cain*, No. 02-0259, 2002 U.S. Dist. LEXIS 16699**,** at *27-28 (E.D. La. 2002) (Africk, J.).  Accordingly, this court will address the merits of Batchelor's conflict of interest claim.

### 4. *Miranda* Violation

In his state habeas petition, Batchelor argued that the police violated his rights under *Miranda* in coercing a videotaped inculpatory statement from him on July 29, 1998.  In order to avoid the article 930.4(C) procedural bar upon which the state appellate court relied to deny Batchelor's *Miranda* claim, Batchelor cites three opinions which he contends demonstrate that Louisiana courts did not regularly apply article 930.4(C) to *Miranda* claims at the time of the Louisiana Second Circuit's opinion.  However, none of these opinions substantiate Batchelor's contention.

In *Bennett v. Whitley*, 41 F.3d 1581 (5th Cir. 1994), the Fifth Circuit held that a state court's reliance on LA. CODE CRIM. PROC. ANN. art. 930.4(A) - which provides that "unless

required in the interest of justice, any claim for relief which was fully litigated in an appeal from

the proceedings leading to the judgment of conviction and sentence shall not be considered" -

does not impose a procedural bar to a federal habeas court's consideration of the claim.  As

articles 930.4(A) and 930.4(C) of the Louisiana Code of Criminal Procedure serve very different

aims, and as the Fifth Circuit in *Bennett* did not attempt to analogize the two provisions, the

undersigned fails to see how *Bennett* is relevant to Batchelor's contention that the Louisiana

Second Circuit relied upon an inadequate state ground in denying his *Miranda* claim on the basis

of article 930.4(C).  In *Dugas v. Cain*, No. 06-0154, 2007 U.S. Dist. LEXIS 66452, at *2-3

(W.D. La. May 7, 2007), the petitioner raised a *Miranda* claim both on direct appeal and in his

state habeas petition, thus rendering article 930.4(C) irrelevant to the state habeas court's

analysis.  Finally, while the Supreme Court of Louisiana in *State v. White*, 606 So. 2d 787, 788

(La. 1999) granted the petitioner a hearing on his *Miranda* claim even though he failed to raise it

on direct appeal, nothing in the opinion or in the history of the case indicates that the state post-

conviction court "clearly and unequivocally excused the procedural default."  *See Stokes*, 123

F.3d at 860.

Based on the foregoing discussion, the undersigned finds that Batchelor has failed to

demonstrate that Louisiana state courts do not regularly apply article 930.4(C) as a procedural bar

to *Miranda* claims.  Accordingly, the Louisiana Second Circuit relied on an independent and

adequate state ground in denying Batchelor relief on this claim.

### B. Cause and Prejudice/Miscarriage of Justice

The Louisiana Second Circuit relied on article 930.4(C) in denying each of the four

claims that Batchelor raised in his state habeas petition.  Having found that article 930.4(C) is an

15

adequate state ground with respect to Batchelor's untimely prosecution and *Miranda* claims, this court will review these claims only if Batchelor can invoke one of the exceptions to the independent and adequate state ground doctrine - the cause and prejudice exception or the miscarriage of justice exception.  Furthermore, while this court did not find that article 930.4(C) is an adequate state ground with respect to Batchelor's false testimony claim, review of Batchelor's false testimony claim, under *Frady*, is procedurally barred unless Batchelor can show cause excusing his double procedural default in not objecting to the testimony at trial and not challenging the testimony on appeal, and also resulting prejudice.  *See Frady*, 456 U.S. at 167. Accordingly, this court will consider whether Batchelor can demonstrate cause and prejudice as to his untimely prosecution, *Miranda*, and false testimony claims, and will then consider whether Batchelor can demonstrate that failure to review any of these claims will result in a fundamental miscarriage of justice.

### 1. Cause and Prejudice

Batchelor contends that he was not able to raise his untimely prosecution, *Miranda*, and false testimony claims on direct appeal because he had limited access to his trial transcript, which allegedly was a result of a transfer between prison facilities.  Doc. # 62 at 9.  At the hearing, Batchelor testified that he had the transcript for 30 days while he was incarcerated in Madison Parish Detention Center.  Doc. # 55 at 38.  When he was transferred to Hunt Correctional Center, he was not allowed to take the transcript with him.  *Id.*

A defendant's limited access to his trial record may satisfy the "cause" requirement.  *See Glover v. Cain*, 128 F.3d 900, 901 (5th Cir. 1997).  However, "a prisoner's lack of access to a transcript cannot constitute cause . . . unless the prisoner shows that the state refused his request

16

for a transcript or that such a request would have been useless because the state routinely denies transcripts to prisoners." *Rucks v. Cain*, No. 07-1191, 2008 U.S. Dist. LEXIS 43358, at *2 (W.D. La. June 2, 2008) (James, J.) (citing *McCowin v. Scott*, 67 F.3d 100, 102 (5th Cir. 1995)).

Batchelor does not argue that the state of Louisiana routinely denies transcripts to prisoners, and he has not demonstrated that the state refused his request for his trial transcript while his appeal was pending.  He had access to his transcript for 30 days when he was preparing his pro se appellate brief at the Madison Parish Detention Center.  He did not file a second request for the trial transcript while his appeal was pending.  Indeed, the record indicates that he did not submit a second request for the transcript until September 2, 2004, when he was preparing his state habeas petition.  Doc. # 7 at 51-53.

Accordingly, Batchelor has not demonstrated cause his failure to raise his untimely prosecution, *Miranda*, and false testimony claims on direct appeal.   However, this court would still be procedurally barred from reviewing the three claims even if Batchelor could successfully show cause because Batchelor cannot make the requisite showing of prejudice on any of the claims.

Batchelor cannot show prejudice on his untimely prosecution claim because the state prosecuted him within the time limits set by the Louisiana Code of Criminal Procedure.  *See Murray*, 477 U.S. at 488 (indicating that a petitioner cannot show prejudice on a claim that would ultimately be unmeritorious).  Article 578 provides that, "except as otherwise provided in this Chapter," in non-capital felony cases, "no trial shall be commenced . . . after two years from the date of institution of the prosecution."  LA. CODE CRIM. PROC. ANN. art. 578.  Article 580 provides, "When a defendant files a motion to quash or other preliminary plea, the running of the

periods of limitation established by Article 578 shall be suspended until the ruling of the court thereon; but in no case shall the state have less than one year after the ruling to commence the trial." La. Code Crim. Proc. Ann. art. 580.  In the case at hand, the state instituted proceedings by filing a bill of information on August 17, 1998, and trial commenced on November 27, 2000. Thus, trial commenced more than three months after the two year time limit established by article 578.  However, on September 4, 1998, Batchelor filed a motion for a preliminary examination (R. at 79), which qualifies as a preliminary plea under article 580.  *See State v. Anderson*, 889 So. 2d 1237, 1248 (La. Ct. App. 2004)    The state filed a response on January 14, 2000 (*Id.* at 159) and the trial court apparently held a hearing on the motion on March 14, 2000.[3]  Under article 580, the article 578 time limit was suspended for the roughly seventeen months that separated Batchelor's motion and the court's ruling on the motion, and thus the state's prosecution of Batchelor was timely under article 578.

Batchelor also has not made the requisite showing of prejudice on his false testimony claim because he has not demonstrated that his false testimony claim arises out of an actual error that the state committed at trial.  In Louisiana, the prosecution denies a defendant a fair trial when it knows, or should have known, that a witness has falsely provided material testimony, and it does not correct the error.  *State v. Willie*, 410 So. 2d 1019, 1030 (La. 1982).  Batchelor asserts that Anne McGowan's testimony that she watched Batchelor attack Peeples with a brick from her doorway was inconsistent with her husband Theodore McGowan's testimony that he

---

[3] While it is unclear from the record when exactly the hearing on Batchelor's motion for a preliminary examination occurred, a hearing that the trial court held on February 7, 2000 mentioned that Batchelor's motion for a preliminary examination would be heard on March 14, 2000. R. at 1392-1401.

pulled his wife away from the doorway when Batchelor approached Peeples with a brick.

Batchelor argues that this inconsistency indicates that one of the McGowans was lying and that

the prosecution solicited false testimony.  Doc. # 7 at 40; Doc. # 62 at 19.  A review of the trial

transcript indicates, however, that Anne McGowan's testimony was consistent with her

husband's testimony.  Theodore testified that when he saw Batchelor approach Peeples with a

brick, "I made my wife . . . I made her go in.  I was pushing her in the house."  R. at 1070.  Anne

testified that her husband did indeed pull her inside the house and away from the doorway when

Batchelor approached Peeples with a brick.  *Id.* at 1110.  Anne further testified, however, that she

saw Batchelor strike Peeples as her husband was pulling her inside.[4]  Anne also testified that

soon after her husband pulled her inside she returned to the doorway and watched Batchelor

attack Peeples.[5]  Anne's testimony therefore did not contradict her husband's testimony.

---

[4] The following exchange took place on Mrs. McGowan's direct examination:

Q. Now you said you saw Batchelor [sic] coming around the corner?
A. Yes, sir.
Q. And what happened after that?
A. He was coming around the corner.  He had a brick in his hand.
Q. All right.  Now.  How was he holding that?
A. In his hand, like a, you holding a object and you grab it so you can't drop it.
Q. Okay.  And you saw that, and what happened?
A. And he was walking and me and Theodore was standing up there, and he was walking, and I thought he was going to walk up to me, so my husband was grabbing, pulling me backwards.  And I was in front of him.  And that's when [Batchelor] struck the pizza man, as he was pulling me backwards in the house.
R. at 1104.

[5] The following exchanges took place on Ms. McGowan's direct testimony:

Q. And then after you came back out, after Theodore pulled you back in, but you came back out anyway.  Is that true?
A. Yes, sir.
Q. Was the pizza man still out in the same spot?

Accordingly, Batchelor has not demonstrated that one of the McGowans provided untruthful testimony.  Furthermore, Batchelor has not demonstrated that the state knowingly presented false testimony at trial.  Batchelor has thus not made the requisite showing of prejudice for his false testimony claim.

Finally, Batchelor cannot make the requisite showing of prejudice for his *Miranda* claim. Even without the challenged inculpatory statement, the record would still include overwhelming evidence that Batchelor committed the crime of armed robbery.  *See Wainwright*, 433 U.S. at 90.

In Louisiana, armed robbery is "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."  LA. REV. STAT. ANN. § 14:64.  A dangerous weapon is "any gas, liquid or other substance or instrumentality, which, in the manner

---

A. Yes, sir.  He hadn't moved.

Q. Okay.  And Batchelor was straddle [sic] him?

A. Steady beating him.

. . .

Q. When you had seen Terrell Bachelor [sic] straddle the pizza man, did he say anything to you and Theodore, personally?  Or did he make any motion toward you or make any signs or anything?

A. No, sir.  He didn't say nothing to us.  He just, when he was coming back from around by building one, he was just walking like he was fixing to walk toward us.  But, my husband was pulling me back inside - was pulling me back from the scene.

Q. So Theodore got you back in?

A. Yes, sir.

Q. You were pregnant at that time, weren't you?

A. Yes, sir.  That's why he was - he didn't want me to see none of that, what was going on.

Q. But you didn't listen to him?

A. No, sir.

R. at 1110-11.

used, is calculated or likely to produce death or great bodily harm." *Id.* at § 14:2(3).

Furthermore, the "force or intimidation" in an armed robbery "may be applied at any time in the

course of the crime in order to complete the offense." *State v. Walker*, 681 So. 2d 1023, 1028

(La. Ct. App. 1996).  Accordingly, an armed robbery is committed, "not only if the perpetrator

uses force or intimidation to take possession of the property, but also if force or intimidation is

used to retain possession immediately after the taking, or to carry away the property, or to

facilitate escape." *See State v. Meyers*, 620 So. 2d 1160, 1163 (La. 1993) (finding that defendant

committed a robbery when he used force or intimidation to retain possession of money he had

just taken from a cash register).

      At trial, the state produced direct and circumstantial evidence that Batchelor was a

principal in the armed robbery of Brett Peeples, and that Batchelor either attacked Peeples with a

brick in order to take possession of Peeples' property or to facilitate escape. *See Meyers*, 620 So.

2d at 1163.  In Joseph Tyrone Henton's statement which Deputy Willie Turner read at trial,

Henton indicated that he drove off with Peeples' car while Batchelor was hitting Peeples with a

brick.  R. at 968.  Nakia Brown testified that Batchelor asked for his share of the money that

Brown and Henton had taken from Peeples' pockets immediately after Batchelor finished hitting

the victim with a brick.  *Id.* at 997-98.  Deputy Turner testified that his investigation of the crime

indicated that Henton removed Peeples' car keys from his pocket while Batchelor was hitting

Peeples with a brick.  *Id.* at 881-82.  The testimony of Anne McGowan established that Batchelor

hit Peeples with a brick immediately after Batchelor, Brown, and Henton stole Peeples'

valuables.  *Id.* at 1101-04.  Finally, photographs of Peeples and testimony from Jerry Strong, the

responding paramedic, established that Peeples was attacked with a dangerous instrumentality.

State's Ex. 18A-24A; R. At 662-63.  Accordingly, Batchelor cannot make the requisite showing of prejudice with respect to his *Miranda* claim because the state presented overwhelming evidence of Batchelor's guilt of the crime of armed robbery.

### 2. Miscarriage of Justice

While Batchelor has not demonstrated cause and prejudice for his untimely prosecution, false testimony, and *Miranda* claims, he would still be able to obtain review of these claims if he could demonstrate that the denial of review would result in a fundamental miscarriage of justice. As previously stated, the miscarriage of justice exception to the independent and adequate state ground doctrine requires the petitioner to show that he is actually, as opposed to legally, innocent.  *See Callins*, 89 F.3d at 213-14.  Based on the testimony of Nakia Brown, Deputy Turner, the McGowans, and Jerry Strong, as well as the statements of Joseph Tyrone Henton and Batchelor himself, the undersigned finds that Batchelor cannot make this showing.

## III. Non-defaulted Claims

Batchelor raised three claims which were not procedurally defaulted - *Faretta* violation, conflict of interest, and insufficiency of the evidence.  This court will review each of these claims on the merits.

### A. *Faretta*

Batchelor contends that his conviction should be reversed because the trial court prevented him from exercising his right to self-representation under *Faretta*.  Denial of the right to self-representation is not subject to harmless error analysis.  *McKaskle v. Wiggins*, 465 U.S. 168, 177 (1984) ("Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not

amenable to 'harmless error' analysis.  The right is either respected or denied; its deprivation
cannot be harmless.").

### 1. The *Faretta* Standard

"The Sixth Amendment does not provide merely that a defense shall be made for the
accused; it grants to the accused personally the right to make his defense." *Faretta v. California*,
422 U.S. 806, 819 (1975).  "To exercise the right, a defendant must 'knowingly and intelligently'
forego counsel, and the request to proceed pro se must be 'clear and unequivocal.'" *United States
v. Martin*, 790 F.2d 1215, 1218 (5th Cir. 1986).

The right to proceed pro se is not absolute.  "Even if a defendant requests to represent
himself . . . the right may be waived through defendant's subsequent conduct indicating he is
vacillating on the issue or has abandoned his request altogether." *Brown v. Wainwright*, 665 F.2d
607, 611 (5th Cir. 1982).  "A waiver may be found if it reasonably appears to the court that
defendant has abandoned his initial request to represent himself." *Id.*  Furthermore, a defendant
who wishes to exercise his right to self-representation must do so in a timely manner.  *United
States v. Wagner*, 158 F.3d 901, 902 (5th Cir. 1998) ("A defendant cannot wait until the eve of
trial to exercise his right to proceed pro se for courts are wary of last minute requests which
'impede the prompt and efficient administration of justice.'") (citation omitted).

### 2. Batchelor's Motions to Proceed Pro Se

Batchelor submitted a clear and unequivocal request to proceed pro se in a written motion
that he signed on October 13, 1999.  R. at 114.  In the motion, entitled "Motion for dismissal of
counsel," Batchelor cited *Faretta* and stated that his request to proceed pro se was "made with
sound-mind and his eyes opened." *Id.*

23

On the following day, the trial court attempted to hold an arraignment, but was unsuccessful because Batchelor's appointed attorney, Michael Kelly ("Kelly"), failed to attend. *Id.* at 167.  When the court asked Batchelor if he planned to plead guilty, he responded, "I rather not say unless I have a presence of counsel."  *Id.* at 171.

On February 7, 2000, the court held a hearing on Batchelor's motion to proceed pro se, as well as Batchelor's pro se motion for writ of habeas corpus.  *Id.* at 1390.  At the hearing, Kelly stated that Batchelor "has a right to represent himself," and that Kelly would not object to serving as stand-by counsel to Batchelor.  *Id.* at 1399.  The prosecutor responded by arguing that "if we allow defendants to start filing these pro say [sic] motions every time they become upset with their attorney, we would never get anything done."  *Id.* at 1400.  The following exchange then took place between the court and Batchelor:

|  |  |
|---|---|
| The Court: | Mr. Batchelor, do you have anything to say? |
| Batchelor: | No, sir. |
| The Court: | Court is going to deny your motion to dismiss counsel. |

*Id.*

Batchelor submitted his second and final clear and unequivocal request to proceed pro se in a written motion that was signed on November 21, 2000, but was not filed with the court until November 29, 2000, the day that Batchelor's trial began.  *Id.* at 582.  This motion, also entitled "Motion for dismissal of counsel," was nearly identical to Batchelor's first motion to proceed pro se.

On November 27, 2000, the court held a hearing on three motions - a pro se motion alleging a *Brady* violation, a pro se motion to quash, and a motion to appoint counsel filed by Kelly that arose out of a complaint that Batchelor filed against Kelly with the Louisiana Attorney

24

Disciplinary Board and a civil rights lawsuit that Batchelor filed against Kelly.  While the

November 27, 2000, hearing did not specifically discuss Batchelor's second motion to proceed

pro se, Batchelor notified the court during the hearing that he had filed the motion.  As the court

was considering the motion to appoint counsel filed by Kelly, Batchelor stated that he "also filed

a motion to dismiss counsel.  It should be - y'all should be getting it sometime this evening or

sometime." *Id.* at 1411.

  At another moment during the hearing on the motion to appoint counsel, Kelly testified

that Batchelor had "expressed that he intends pursuant to his family, based upon my

misrepresentation, to hire his own attorney." *Id.* at 1418.  The court responded, "Well, I feel that

these actions are dilatory and of no moment." *Id.*  Batchelor was silent during this exchange.

  As the court was hearing the merits of the motion to appoint counsel, the following

exchange among Kelly, Batchelor, and the court took place:

| | |
|---|---|
| Kelly: | I don't see anything in here, particularly, that would cause me to work adversarial to his best interest.  I believe that it would only be fair to the court that my client is acting in good faith, that I am working diligently in his best interest.  I also would like to note for the court that Mr. Batchelor has expressed a direct intent to have me terminated as his counsel and to have - to acquire his own counsel pursuant to arrangements made by his family.  However, in the interest of the court, I would admonish the court that I don't know if this is a dilatory tactic or if his tactic is in good faith.  In light of that, if the court, after taking everything under notice and reviewing all the documents and the testimony, would make a determination as to whether or not this trial should proceed. |
| The Court: | All right.  Mr. Batchelor, do you have any questions to ask Mr. Kelly in regards to this matter? |
| Batchelor: | No, Your Honor.  I think that everything that I have spoken and the paperwork that I have written upon here I think it speaks for itself. |

*Id.* at 1421.

The court ultimately denied the motion to appoint counsel, as well as Batchelor's pro se motion alleging a *Brady* violation, and Batchelor's pro se motion to quash.

On November 29, 2000, the first day of trial, the court considered Batchelor's second motion to proceed pro se after the prosecution had already called a few witnesses.  The following exchange among the court, Kelly, and Batchelor took place at this hearing:

<blockquote>

The Court: Now I understand that another motion to dismiss counsel has been filed with the Clerk's Office.  It was dated November 21st, but it apparently was filed in on the 29th, which was yesterday.  It appears to be the same motion that we have already discussed and ruled on the other day, but I wanted to make sure that this is not a new motion and want to know what the defendant's wishes are as far as this motion.  Let me hand it to you and - let the defendant look at it . . . .

Kelly: Okay.  For the record, Marshall Terrell Batchelor has reviewed the motion to dismiss counsel and he states that it is the same motion that has already been ruled upon by the Court, and in fact, is not a new motion.

The Court: Is that correct, Mr. Batchelor?

Batchelor: Yes, Your Honor.

The Court: All right.  In that case, we will just file it in and make a notation that it was ruled on the 27th, I guess, the first day of the trial.

</blockquote>

*Id.* at 863.

While the trial court believed that it had ruled on Batchelor's second motion to proceed pro se, it was arguably, although understandably given Batchelor's responses above, mistaken. However, the trial court heard several motions on November 27th,  and while none of these was Batchelor's second motion to proceed pro se, Batchelor himself agreed that the motion filed on the 29th was duplicative of the ones previously ruled on.

### 3. Analysis

As previously noted, the Louisiana Second Circuit Court of Appeal initially determined

26

that the trial court violated Batchelor's right to self-representation under *Faretta*. *State of Louisiana v. Batchelor*, 823 So. 2d 367 (La. Ct. App. May 10, 2002). The court stated, "Because we find that the trial court made no meaningful effort to inform Batchelor of the consequences of proceeding without counsel, try to assess the defendant's literacy, competency, understanding, or volition, or determine whether defendant's waiver of counsel was 'intelligently and voluntarily made,' we must reverse the conviction and sentence, and remand this case to the trial court for new proceedings." *Id.* at 373.

However, a six-judge panel of the Louisiana Second Circuit subsequently granted rehearing on the case and affirmed Batchelor's conviction and sentence. *State of Louisiana v. Batchelor*, 2002 La. App. LEXIS 2398 (La. Ct. App. July 24, 2002). The court focused on Batchelor's second motion to proceed pro se, relegating consideration of Batchelor's first motion to proceed pro se to a footnote. In this footnote, the court found, in essence, that Batchelor waived the right to self-representation which he asserted in his first motion to proceed pro se. The court specifically stated,

> Previously, on October 14, 1999, defendant filed a similar 'Motion for Dismissal of Counsel,' urging that his attorney had failed to secure his release from jail. In one paragraph of this motion, defendant also asked that he be allowed to proceed pro se with standby counsel. When he appeared in court that same day, however, and was asked by the judge whether he wished to enter a plea of not guilty, defendant replied, 'I rather not say unless I have presence of counsel.' The court's ruling denying defendant's first request to dismiss his attorney was made on February 7, 2000. The court did not address any request for self-representation nor did defendant personally argue for such when given the opportunity to do so.

*Id.* at *5.

Under 28 U.S.C. § 2254(d)(1), this court cannot recommend that an application for a writ of habeas corpus be granted with respect to any claim that was adjudicated on the merits in state

27

court unless the adjudication of the claim "resulted in a decision that was contrary to, or involved

an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States."  The undersigned declines to make this finding with respect to the

Louisiana Second Circuit's determination of Batchelor's first motion to proceed pro se.  The

Louisiana Second Circuit did not unreasonably apply *Faretta* and its progeny in finding that

Batchelor's actions after he filed his first motion to proceed pro se - his refusal to enter a plea

unless he had "presence of counsel" just one day after he submitted his first motion to proceed

pro se and his failure to argue in favor of his right of self-representation at the February 2000

hearing when given the opportunity to do so - amounted to a waiver.  These actions reasonably

signaled that Batchelor had "abandoned his initial request to represent himself."  *Brown v.*

*Wainwright*, 665 F.2d at 611.

Batchelor contends that the trial court violated his right to self-representation which he

had raised in his first motion to proceed pro se because it did not conduct a meaningful inquiry to

determine whether Batchelor was knowingly and intelligently foregoing his right to counsel.

Batchelor relies on *United States v. Cano*, 519 F.3d 512 (5th Cir. 2008).  In that case, the

defendant moved to proceed pro se at sentencing and on appeal.  The district court dismissed the

motions without providing the defendant a hearing, and a magistrate judge appointed counsel to

represent the defendant on appeal.  *Id.* at 515.  Citing the factors that *United States v. Martin*, 790

F.2d 1215, 1218 (5th Cir. 1986) requires a court to consider in determining whether a

defendant's motion to proceed pro se has been knowingly and intelligently made, the court

reasoned that "these factors indicate that the district court must conduct a meaningful

investigation into a defendant's constitutionally protected request to represent himself; summary

28

dismissal is insufficient." *Id.* at 517.  The court then stated, "[Defendant] effectively asserted his right to self-representation, so the failure to hold a *Faretta* hearing on the issue was error, and [defendant] did not waive the request by subsequent conduct." *Id.*

*Cano* does not dictate that the trial court erred in not providing Batchelor a full *Faretta* hearing after he filed his first motion to proceed pro se.  First, *Cano* does not stand for the proposition that a trial court must hold a *Faretta* hearing every time a defendant clearly and unequivocally requests to proceed pro se.  In observing that the defendant in *Cano* did not waive his request to proceed pro se after it ruled that he was entitled to a *Faretta* hearing, the Fifth Circuit implicitly acknowledged that a trial court need not provide a *Faretta* hearing to a defendant who has waived his request to proceed pro se.  *See, e.g.*, *Brown v. Wainwright*, 665 F.2d at 611 ("While in some cases a personal dialogue between the court and defendant may be advisable, we decline to hold such a hearing is required where all circumstances indicate defendant has abandoned his request to conduct his own defense.").

Second, the facts in *Cano* are entirely distinguishable from the facts at hand.  In *Cano*, the court did not conduct any type of investigation into the defendant's motion to proceed pro se before it appointed counsel for him.  In contrast, the trial court in this case specifically conducted a hearing on Batchelor's first motion to dismiss counsel.[6]  Indeed, Batchelor's counsel and the prosecutor argued the merits of the motion.  R at 1398-1400.  The court then asked Batchelor if he had "anything to say." *Id.* at 1400.  When Batchelor responded, "[n]o,

---

[6] Contrary to the Louisiana Second Circuit's assertion that the trial court during the February 7, 2000 hearing "did not address any request for self-representation," *State of Louisiana v. Batchelor*, 2002 La. App. LEXIS 2398, the trial court did explicitly consider Batchelor's first motion to dismiss counsel.  *See* R at 1398-1400.

sir," the court denied the motion.  *Id.*

As previously stated, Batchelor's apparent unwillingness to argue his motion when given the opportunity to do so, in conjunction with his statement at his attempted arraignment that he did not wish to plea "unless [he] ha[d] presence of counsel," reasonably signaled that Batchelor had "abandoned his initial request to represent himself."  *See Brown v. Wainwright*, 665 F.2d at 611.  Accordingly, the trial court was not required to conduct a full *Faretta* hearing, and the Louisiana Second Circuit did not unreasonably apply *Faretta* and its progeny in finding that Batchelor waived his right to self-representation which he had raised in his first motion to proceed pro se.  Furthermore, to the extent that Batchelor sent mixed signals, the Louisiana Second Circuit correctly construed the mixed signals to be a waiver of the right to self representation.  *See United States v. Frazier-El*, 204 F.3d 553, 559 (5th Cir. 2000) ("The requirement that a request for self-representation be clear and unequivocal also prevents a defendant from taking advantage of and manipulating the mutual exclusivity of the rights to counsel and self-representation. . . . In ambiguous situations created by a defendant's vacillation . . . we must ascribe a 'constitutional primacy' to the right to counsel because this right serves both the individual and collective good, as opposed to only the individual interests served by protecting the right of self-representation.").

In addition, this court finds that the Louisiana Second Circuit did not unreasonably apply *Faretta*, for purposes of 28 U.S.C. § 2254, with respect to Batchelor's second motion to proceed pro se.  The Second Circuit rested its ruling on two bases.  First, it found that Batchelor's second motion to proceed pro se was a "dilatory tactic."  *State of Louisiana v. Batchelor*, 2002 La. App. LEXIS 2398 at *9.  The Second Circuit also found that Batchelor's "vacillation

30

between wanting to be represented by counsel and desiring to undertake his own defense, together with his failure to specifically assert this right at the November 27 hearing, constitutes an implicit waiver of his request [to proceed pro se]." *Id.*  The undersigned agrees with both bases upon which the Second Circuit supported its ruling.

The Louisiana Second Circuit was clearly entitled to find that Batchelor's second motion to dismiss was untimely, and hence a "dilatory tactic," because Batchelor filed the motion on the first day of trial.  To grant Batchelor's last minute request to proceed pro se would have "obstruct[ed] the orderly procedure in the courts" and would have "interfered with the fair administration of justice." *United States v. Wagner*, 158 F.3d 901, 902 (5th Cir. 1998). Furthermore, "no decision of the Supreme Court obligates state courts to permit self-representation when the defendant fails to invoke his *Faretta* right in a timely manner." *Wood v. Quarterman*, 491 F.3d 196, 202 (5th Cir. 2007).  Accordingly, the Second Circuit's ruling that Batchelor's second motion to proceed pro se was untimely was not an unreasonable application of federal law.

The Louisiana Second Circuit was also entitled to find that Batchelor waived his right to self-representation during the November 27, 2000 hearing.  Although Batchelor did not file his second motion to proceed pro se until November 29, Batchelor told the court on November 27 to expect to receive the motion soon.  Nevertheless, Batchelor did not attempt to argue the merits of the motion in any fashion on November 27, even though trial was just two days away. Furthermore, when Kelly testified that Batchelor's family was planning to hire an attorney to represent him, Batchelor did not correct Kelly by testifying that he planned to represent himself, even when the court explicitly gave him the opportunity to do so.  R. at 1421.  Accordingly,

31

Batchelor's actions at the November 27th hearing reasonably signaled that he was "vacillating on the issue or ha[d] abandoned his request altogether." *Brown v. Wainwright*, 665 F.2d at 611.

Finally, the trial court's failure to address explicitly Batchelor's *Faretta* claim with respect to his second motion to proceed pro se does not prevent this court from recommending the denial of the claim. "On habeas review, we look through unexplained state court decisions leaving, in effect, the denial of post-conviction relief to the last reasoned state court decision to address the claim at issue." *Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir. 2007). Thus, this court's review of Batchelor's *Faretta* claim with respect to his second motion to proceed pro se is not barred because the Louisiana Second Circuit addressed the claim (and was the last state court to provide a reasoned decision on the claim).

## B. Conflict of Interest

### 1. Exhaustion

In his state habeas petition, Batchelor alleged that his attorney, Michael Kelly, labored under a conflict of interest for the following reasons: (1) Batchelor filed a complaint against Kelly with the Louisiana Attorney Disciplinary Board while the case was still pending; (2) Theodore McGowan, a witness who provided testimony against Batchelor, was Kelly's cousin; and (3) Batchelor's father campaigned for a candidate who sought the same judgeship that Kelly's wife sought. Doc. # 7, Ex. 1 at 12. Batchelor then made unsubstantiated assertions that he was prejudiced by Kelly's conflicts of interest because Kelly failed to perform various tasks at trial. *Id.* at 24. In his federal petition, Batchelor set forth the same ineffective assistance of counsel claim verbatim. Doc. # 1, Ex. 2. On August 3, 2009, this court determined that an evidentiary hearing was necessary in Batchelor's case, "particularly with regard to [Batchelor's]

32

ineffective assistance of counsel claim."  Doc. # 27.  Batchelor's appointed attorney subsequently submitted pre-hearing and post-hearing briefs which argued that Batchelor was prejudiced by Kelly's conflict of interest because Kelly failed to object to (i) an out of court statement from co-defendant Joseph Tyrone Henton which violated the Confrontation Clause; (ii) hearsay at several moments in the trial; (iii) images of the victim which were prejudicial and duplicative; and (iv) an ambulance report.  Doc. # 62 at 10-13.

Batchelor's conflict of interest claim, as it is argued in his appointed attorney's pre-hearing and post-hearing briefs, is technically unexhausted because it has not been fairly presented to the highest court in Louisiana.  *See Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999).  Batchelor's conflict of interest claim in his state petition included several unsubstantiated assertions that Kelly's performance was deficient.  In contrast, Batchelor's conflict of interest claim that is currently before this court emphasizes four specific instances where Kelly's performance was deficient, none of which was included in Batchelor's state petition.  For purposes of the exhaustion requirement under § 2254,  Batchelor's current conflict of interest claim is not the "substantial equivalent" of the conflict of interest claim that he presented to the state courts because the current claim adds new factual claims.  *See Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) ("The habeas applicant need not spell out each syllable of the claim before the state court to satisfy the exhaustion requirement.  This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application.").

In general, a federal court should dismiss a § 2254 "mixed petition" - a petition that contains both exhausted and unexhausted claims.  *Rose v. Lundy*, 455 U.S. 509, 522 (1982).  However, the AEDPA provides that a federal court may, in its discretion, deny habeas relief on

the merits of a claim, regardless of whether the petitioner has exhausted state remedies. *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998); *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Even though Batchelor's conflict of interest claim is technically unexhausted, the undersigned will review the claim because it lacks merit. Thus, review of the claim is consistent with the text of § 2254(b)(2), which allows a federal habeas court to deny relief on an unexhausted claim, as well as the spirit of § 2254(b)(2), which counsels that the interests of the petitioner, the warden, the state courts, and the federal courts are well served when a federal court denies relief on an unexhausted claim that lacks merit, instead of sending it back to the state courts. *See Mercadel v. Cain*, 179 F.3d 271, 275-278 (5th Cir. 1999).

## 2. The *Strickland* Standard

When a petitioner alleges, as Batchelor does here, that his attorney labored under a personal conflict of interest, rather than a conflict of interest based on the representation of multiple defendants, the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984), applies. *Beets v. Collins*, 65 F.3d 1258, 1273 (1995). Under this test, a petitioner must show (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).

If the petitioner does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). The prongs of the test also need not be analyzed in any particular order. *Goodwin v. Johnson*, 132

34

F.3d 162, 172 n.6 (5th Cir. 1997).

To prove deficient performance, the defendant must demonstrate that counsel's actions "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687.  There is a strong presumption that counsel performed adequately and exercised reasonable professional judgment. *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006).

To prove prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome" and is less than a preponderance of the evidence.  *Id.* at 693-94.  Finally, prejudice exists only if the defendant demonstrates that he would have received less jail time.  *Glover v. United States*, 531 U.S. 198, 203 (2001).

Ultimately, the "benchmark" of the ineffective assistance of counsel analysis is the "fairness of the adversary proceeding."  *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). Accordingly, "the essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."  *Id.*

### 3. Analysis

In his federal habeas petition, Batchelor essentially contended that Kelly denied him the effective assistance of counsel for failing to: (1) call Batchelor to testify on his own behalf; (2) call a "Robert Cleveland" to the stand; (3) object to Batchelor's incriminating statement; (4) emphasize that the victim's blood was not found on Batchelor's clothing; (5) emphasize that two sets of bloody clothing were found in the house of Batchelor's girlfriend at the time of the crime;

and (6) object to the trial court's dispositions of Batchelor's motions to proceed pro se.  Doc. # 1 at 19.  However, Batchelor did not support any of these assertions with facts.  Accordingly, Batchelor has failed to carry his burden of proof on these six claims.  *See Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992) (ruling that a defendant must overcome a "preponderance of the evidence" burden of proof as to both of *Strickland*'s prongs).

However, as previously noted, Batchelor's appointed attorney forcefully argued that Kelly denied him the effective assistance of counsel on four separate grounds: (i) failure to object to testimony that violated the Confrontation Clause; (ii) failure to object to hearsay testimony at several different instances at trial; (iii) failure to object to duplicative photographs of the victim; and (iv) failure to object to the victim's ambulance report.  The undersigned will consider each of these claims in turn.

### (a) Confrontation Clause Claim

Batchelor first alleges that Kelly rendered ineffective assistance for allowing the government to introduce a statement from Joseph Tyrone Henton ("Henton"), a non-testifying co-defendant of Batchelor's, which Batchelor contends violated his rights under the Confrontation Clause.  On direct examination, Deputy Willie Turner read a statement that he had previously taken from Henton in which Henton alleged that Batchelor hit the victim with a brick while Henton stole the victim's car.  R. At 968.  Kelly initially objected to this testimony but subsequently withdrew his objection.  *Id.* at 965-67.  When Kelly subsequently cross-examined Turner, he requested Turner to read Henton's statement again.  *Id.* at 978-83.

The Supreme Court's Confrontation Clause jurisprudence significantly changed after the time of Batchelor's trial in November 2000.  In *Crawford v. Washington*, 541 U.S. 36 (2004), the

36

Supreme Court held that the Confrontation Clause prohibits the admission of "testimonial

statements of a witness who did not appear at trial unless he was unavailable to testify, and the

defendant had a prior opportunity for cross-examination."  *Id.* at 53-54.  *Crawford* superseded the

rule set forth in *Ohio v. Roberts*, 448 U.S. 56 (1980), which held that hearsay statements do not

violate the Confrontation Clause if the statements come within a "firmly rooted hearsay

exception" or contain "particularized guarantees of trustworthiness."  *Id.* at 66.  Since *Strickland*

requires a court to make "every effort . . . to reconstruct the circumstances of counsel's

challenged conduct," Kelly's failure to raise a Confrontation Clause objection to the introduction

of Henton's statement and his subsequent decision to solicit Henton's statement from Turner

must be viewed against the standard set forth in *Ohio v. Roberts*.  *See Strickland*, 466 U.S. at

693-94; *Paredes v. Quarterman*, 574 F.3d 281, 287 (5th Cir. 2009) (providing that in a

*Strickland* inquiry, "counsel's performance is judged by the law that existed at the time of trial

and not by reference to law that was then unavailable").

     However, while Henton's statement would appear to fall under the exception accorded to

statements against penal interest, this court need not engage in a detailed analysis of whether

Henton's statement was "firmly rooted" in a hearsay exception or contained "particularized

guarantees of trustworthiness."  Assuming for the sake of argument, without holding so, that

Henton's statement was inadmissible and that Kelly was deficient in failing to object to it,

Batchelor is still not entitled to relief.  Under *Strickland*, Batchelor must show that the exclusion

of Henton's statement would undermine "confidence in the outcome" of his case.  *Id.* at

Batchelor cannot make this showing because even without Henton's statement, the state would

be able to sufficiently support Batchelor's conviction of armed robbery with Batchelor's own

inculpatory statement, and the testimony of Nakia Brown, the McGowans, Deputy Turner, and Jerry Strong. *See* discussion in cause and prejudice section, *supra*. Therefore, even if Kelly was deficient in failing to raise a Confrontation Clause objection, his deficient performance did not prejudice Batchelor.

### (b) Hearsay Claim

Batchelor next contends that Kelly was ineffective because he allowed the government to introduce several instances of hearsay testimony and even introduced hearsay testimony himself. Batchelor first points to Kelly's failure to object to Deputy Sammy Byrd's testimony regarding what he learned from other officers about the identity of the co-defendant who drove the victim's vehicle from the scene of the crime. R. at 630-31. Batchelor also points to Kelly's failure to object to Deputy Turner's testimony regarding what Anne McGowan told him she witnessed, as well as Deputy Turner's testimony regarding what he learned from his interviews with Nakia Brown, Joseph Tyrone Henton, and other unnamed witnesses. *Id.* at 630-631, 860, 879-85. Finally, Batchelor alleges that Kelly's solicitation of Henton's statement during Deputy Turner's cross-examination amounted to a hearsay violation. *Id.* at 979-83.

Assuming for the sake of argument, without holding so, that Kelly was deficient in failing to allow the aforementioned testimony to enter the record, Batchelor still would not be entitled to relief because he cannot make the requisite showing of prejudice. First, Deputy Byrd's testimony could not have played a role in the jury's determination because it did not pertain in any way to Batchelor's guilt or innocence. Second, the exclusion of Deputy Turner's testimony regarding what Ms. McGowan and Brown told him would not undermine confidence in the outcome of the case because Ms. McGowan and Brown testified on their own to the same points covered in

38

Deputy Turner's testimony.  Finally, the exclusion of Henton's statement would also not undermine confidence in the outcome of the case because, as previously mentioned, Batchelor's conviction sufficiently rests on other evidence, namely his own inculpatory statement, and the testimony of Brown, the McGowans, Strong, and Turner, in so far as Turner's testimony is limited to what he learned from Brown.

### (c) Photographic Evidence Claim

Batchelor argues that Kelly rendered ineffective assistance because he did not object to the government's introduction of several graphic photographs of the victim, some of which were enlargements of photographs that the jury had already seen.  Batchelor specifically argues that the introduction of these photographs "resulted in inflaming the jury and created an impression that there was much more evidence than what actually existed."  Doc. # 62 at 12.

In Louisiana, "the test of admissibility of allegedly gruesome photographs is whether their probative value outweighs the possible prejudice that may result from their display to the jury." *State v. Valentine*, 364 So.2d 595, 597 (La. 1978).  Furthermore, "photographs are generally admissible which illustrate any fact or which shed light on an issue, or are relevant to describe the person, place, or thing involved."  *Id.*

In the case at hand, the government introduced the challenged photographs to illustrate responding paramedic Jerry Strong's observations of the victim's injuries.  R. at 664-71.  The record reveals that the government used these exhibits to establish that the victim was beaten with a "dangerous weapon," for purposes of the Louisiana armed robbery statute, LA. REV. STAT. ANN. § 14:64.

Accordingly, the photographs were very relevant to "shed light" on an element of the

crime, and the undersigned declines to find that their probative value was outweighed by any resulting prejudice.  Kelly's failure to object to the photographs therefore did not amount to deficient performance because the photographs were admissible.

### (d) Ambulance Report Claim

Batchelor's final ineffective assistance claim involves Jerry Strong's ambulance report that the government introduced during Strong's re-direct examination.  R. at 681-82.  Batchelor contends that Kelly was ineffective in failing to object to the ambulance report because it was hearsay, cumulative, was not supported by a proper foundation, and unduly prejudicial because it stated without a scientific basis that the victim was beaten with an "unknown object."  *Id.* at 682.

The report was not hearsay because it qualified under the business record exception to the hearsay rule, La. Code Evid. Ann. art. § 803(6).[7]  Strong essentially testified that the report, which was titled "Patient Care Report," was made "in the course of a regularly conducted

---

[7] This rule states that the following is "not excluded by the hearsay rule": "A memorandum, report, record, or data compilation, in any form, including but not limited to that which is stored by the use of an optical disk imaging system, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. This exception is inapplicable unless the recorded information was furnished to the business either by a person who was routinely acting for the business in reporting the information or in circumstances under which the statement would not be excluded by the hearsay rule. The term "business" as used in this Paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit. Public records and reports which are specifically excluded from the public records exception by Article 803(8)(b) shall not qualify as an exception to the hearsay rule under this Paragraph."  La. Code Evid. Ann. art. § 803(6).

business activity" of his company, American Medical Response, and Strong was qualified to make this assessment because he was the paramedic who prepared and signed the report.  R. at 681.  This testimony was also sufficient to provide the report with a proper foundation.  *See State v. Juniors*, 915 So. 2d 291, 327 (La. 2005) ("The witness laying the foundation for the admissibility of business records need not have been the preparer of the records; however, the witness must be familiar with and able to testify from personal knowledge about the bookkeeping and accounting procedures of the entity whose business records are sought to be introduced.").

Furthermore, the ambulance report's assessment that the victim had been hit by an "unknown object" was not unduly prejudicial.  The report's reference to the "unknown object" could not have unfairly influenced the jury on whether Batchelor hit the victim with an object because the government called several witnesses who testified that Batchelor hit the victim with a brick.

Accordingly, the ambulance report was admissible, and Kelly was not deficient in failing to object to it.  However, even if Kelly were deficient in failing to make this objection, Batchelor still would not be able to demonstrate the requisite amount of prejudice under *Strickland* because the ambulance report was simply not a critical component of the government's case against Batchelor.

### C. Insufficiency of the Evidence

Batchelor's insufficiency of the evidence claim is the last claim that this court will review on the merits.  Batchelor essentially argues that the evidence presented at trial was insufficient to convict him of armed robbery because the victim's valuables had already been stolen at the time he beat the victim with a brick.  Thus, Batchelor contends, the government should have charged

him with the two separate crimes of simple robbery and assault and battery rather than armed

robbery.  Batchelor relies on testimony from Latasha Dixon and the McGowans that Batchelor hit

the victim with a brick only after Henton and Brown had stolen the victim's valuables and fled

the immediate area.

When a habeas petitioner asserts that the evidence presented to the court was insufficient

to support his conviction, the limited question before a federal habeas court is whether the state

appellate court's decision to reject that claim was an objectively unreasonable application of the

clearly established federal law set out in *Jackson v. Virginia*, 443 U.S. 307 (1979).  *Williams v.

Puckett*, 283 F.3d 272, 278-79 (5th Cir. 2002).  A conviction is based on sufficient evidence if,

"after viewing the evidence in the light most favorable to the prosecution, any rational trier of

fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v.

Virginia*, 443 U.S. 307, 319 (1979).  The *Jackson* inquiry "does not focus on whether the trier of

fact made the correct guilt or innocence determination, but rather whether it made a rational

decision to convict or acquit."  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Thus, a conviction

may rest on sufficient evidence "even though the facts also support one or more reasonable

hypotheses consistent with the defendant's claim of innocence."  *Gibson v. Collins*, 947 F.2d 780,

783 (5th Cir. 1991).

As previously stated, in Louisiana, armed robbery is "the taking of anything of value

belonging to another from the person of another or that is in the immediate control of another, by

use of force or intimidation, while armed with a dangerous weapon."  LA. REV. STAT. ANN. §

14:64.  A dangerous weapon is "any gas, liquid or other substance or instrumentality, which, in

the manner used, is calculated or likely to produce death or great bodily harm."  *Id.* at § 14:2(3).

Furthermore, the "force or intimidation" in an armed robbery "may be applied at any time in the course of the crime in order to complete the offense." *State v. Walker*, 681 So. 2d 1023, 1028 (La. Ct. App. 1996).  Accordingly, an armed robbery is committed, "not only if the perpetrator uses force or intimidation to take possession of the property, but also if force or intimidation is used to retain possession immediately after the taking, or to carry away the property, or to facilitate escape." *See State v. Meyers*, 620 So. 2d 1160, 1163 (La. 1993) (finding that defendant committed a robbery when he used force or intimidation to retain possession of money he had just taken from a cash register).

The Louisiana Second Circuit Court of Appeal invoked and applied the *Jackson* standard. *Louisiana v. Batchelor*, 823 So. 2d at 371.  The court then concluded that the evidence presented at trial was sufficient to support Batchelor's armed robbery conviction based on the following observations and conclusions:

1. The testimony of the McGowans and Latasha Dixon was "direct evidence supporting the jury's finding that Batchelor was involved in the taking of something of value belonging to [the victim], from the person of [the victim], by use of force while armed with dangerous weapon." *Id.* at 372.

2. The testimony of paramedic Jerry Strong and the testimony and photographs of the victim demonstrated that Batchelor used the brick as a "dangerous instrumentality." *Id*.

3. Nakia Brown's testimony "implicate[d] Batchelor as the instigator of the crime and a recipient of some of the stolen money." *Id*.

4. In Batchelor's own inculpatory statement, he admitted that he "participated in kicking Peeples and threw a brick at him." *Id.*  Batchelor also admitted that he allowed Brown and

43

Henton to take the Peeples' valuables.  *Id.*

The evidence that the Louisiana Second Circuit considered in determining that Batchelor was guilty of armed robbery indicates that the court did not explicitly find that Batchelor attacked Peeples with a brick during the "course of the crime."  *See State v. Walker*, 681 So. 2d at 1028. However, the absence of this explicit finding does not require this court to determine that the state court unreasonably applied *Jackson* for purposes of § 2254.  The AEDPA "compels federal courts to review for reasonableness the state court's ultimate decision, not every jot of its reasoning."  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001).  Accordingly, the undersigned finds that the state reasonably applied *Jackson* because the government presented evidence at trial that would enable a "rational trier of fact" to find rather easily that Batchelor either attacked Peeples with a brick in order to take possession of Peeples' property or to facilitate escape.  *See Meyers*, 620 So. 2d at 1163.  In Joseph Tyrone Henton's statement which Deputy Willie Turner read at trial, Henton indicated that he drove off with Peeples' car while Batchelor was hitting Peeples with a brick.  R. at 968.  Nakia Brown testified that Batchelor asked for his share of the money that Brown and Henton had taken from Peeples' pockets immediately after Batchelor finished hitting the victim with a brick.  *Id.* at 997-98.  Deputy Turner testified that his investigation of the crime indicated that Henton removed Peeples' car keys from his pocket while Batchelor was hitting Peeples with a brick.  *Id.* at 881-82.  The testimony of Anne McGowan established that Batchelor hit Peeples with a brick immediately after Batchelor, Brown, and Henton stole Peeples' valuables.  *Id.* at 1101-04.  Finally, Batchelor admitted in his own statement that he hit Peeples with a brick immediately after he and his associates stole Peeples' valuables and immediately before Henton stole Peeples' car.  *Id.* at 971;

44

State's Ex. 28 at 6-7.    Thus, plaintiff's argument regarding the sufficiency of the evidence is not

at all convincing.

### CONCLUSION

For the reasons stated above, it is recommended that petitioners' motions (docs. # 1, 7)

under 28 U.S.C. § 2255 be **DENIED**.  Under the provisions of 28 U.S.C. §636(b)(1)(C) and

FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and

Recommendation to file specific, written objections with the Clerk of Court.  A party may

respond to another party's objections within **fourteen (14) days** after being served with a copy

thereof.  A courtesy copy of any objection or response or request for extension of time shall be

furnished to the District Judge at the time of filing.  Timely objections will be considered by the

District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

**REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE**

**SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 29th day of April, 2010.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE