RECEIVED
IN MONROE, LA

AUG 09 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | |
|---|---|
| **MARSHALL BATCHELOR** | **CIVIL ACTION NO. 07-1623** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **WARDEN BURL CAIN** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

Pending before the Court is a Petition for Writ of *Habeas Corpus* under 28 U.S.C. § 2254 [Doc. Nos. 1 & 7] filed by Petitioner Marshall Batchelor ("Batchelor"). On April 29, 2010, Magistrate Judge Karen L. Hayes issued a Report and Recommendation [Doc. No. 65] in which she recommended that the Court deny Batchelor's Petition and dismiss this case with prejudice. On May 27, 2010, Batchelor filed objections [Doc. No. 68] to the Report and Recommendation. On June 15, 2010, the State filed a response [Doc. No. 71] to Batchelor's objections.

For the following reasons, the Court ADOPTS IN PART and DECLINES TO ADOPT IN PART the Report and Recommendation of the Magistrate Judge.

### I. ANALYSIS

The Magistrate Judge accurately recounted the factual and procedural background of the case, and, for the sake of brevity, the Court incorporates by reference those portions of her Report and Recommendation.[1]

---

[1] In the first paragraph of the Report and Recommendation, the Magistrate Judge states that Batchelor is serving a sixty-year sentence for armed robbery after a "1987 conviction." [Doc. No. 65, p. 1]. This is a clear clerical error, and it is correctly stated in a subsequent paragraph of the Report and Recommendation that Batchelor was convicted "following trial by jury on December 1, 2000." [Doc. No. 65, p. 1].

Batchelor has raised six claims for relief: (1) the State's untimely prosecution of him, (2) the State's knowing use of perjured testimony to convict him, (3) the ineffective assistance of his counsel Michael Kelly, who operated under conflicts of interest, (4) the State's violation of his Miranda rights, (5) the trial court's violation of his right to self-representation, and (6) insufficiency of the evidence.

## A.    Claims of Untimely Prosecution and Perjured Testimony

With regard to the first two claims, untimely prosecution and perjured testimony, the Court agrees with and ADOPTS the Magistrate Judge's analysis and finds that these claims should be denied.

## B.    Conflict of Interest/Ineffective Assistance of Counsel

As his third claim, Batchelor contends that his trial counsel, Michael Kelly ("Kelly"), operated under a conflict of interest and that, as a result, his performance fell below the *Strickland* standard in four ways: by failing to object to the introduction of a statement by co-conspirator Joseph Tyrone Henton ("Henton"), by failing to object to hearsay testimony by Deputies Byrd and Turner, by failing to object to the introduction into evidence of duplicative photographs of the victim's injuries, and by failing to object to the introduction into evidence of the ambulance report.  The Magistrate Judge conducted a hearing on this claim, but determined that his claim lacked merit.

The Court agrees with and ADOPTS the Magistrate Judge's analysis and her recommendation that Kelly's performance did not violate *Strickland* when he failed to object to hearsay testimony by Deputies Byrd and Turner and failed to object to the admission of the ambulance report offered during the testimony of paramedic Jerry Strong.

However, Batchelor strenuously objects to the Magistrate Judge's conclusion that Kelly's

2

performance was not deficient when he failed to object to the State's introduction of a hearsay statement by Henton. Batchelor acknowledges that his trial took place before the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004), but contends that even under prior case law, Henton's statement was not admissible, and Kelly was deficient for failing to object.

The Court agrees with Batchelor that it appears highly unlikely that Henton's statement would have been admissible during Batchelor's trial and that Kelly should have preserved the objection. *See Bruton v. United States*, 391 U.S. 123, 149 (1968) (Admission of a co-defendant's confession in a joint trial violated the petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment.); *see also Lilly v. Virginia*, 527 U.S. 116, 134 n.5 (1999) ("[T]he Court in *Lee*[ *v. Illinois*, 476 U.S. 530 . . . (1986),] rejected the dissent's position that a nontestifying accomplice's confessions that are 'unambiguously' against the accomplice's penal interest are *per se* admissible . . . . A statement . . . that falls into the category [of] . . . 'a confession by an accomplice which incriminates a criminal defendant' . . .does not come within a firmly rooted hearsay exception. This, of course, does not mean . . . that the Confrontation Clause imposes a blanket ban on the government's use of [nontestifying] accomplice statements that incriminate a defendant. Rather, it simply means that the government must satisfy the second prong of the *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), test in order to introduce such statements.") (quoting *Lee*, 476 U.S. at 544 n.5)(other citations and internal quotation marks omitted)).

Nevertheless, in her Report and Recommendation, the Magistrate Judge determined that she "need not engage in a detailed analysis of whether Henton's statement was 'firmly rooted' in a hearsay exception or contained 'particularized guarantees of trustworthiness'" because she

3

concluded that Batchelor suffered no prejudice as a result of Kelly's failure to object to the

Henton statement. The Court agrees with and ADOPTS the Magistrate Judge's conclusion that

the State could have convicted Batchelor based on his confession and the testimony of the other

witnesses. *See United States v. Basey*, 816 F.2d 980, 1005 (5th Cir. 1987) (citing *Schneble v.*

*Florida*, 405 U.S. 427, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340 (1972) ("Even if a statement is

admitted in violation of the *Bruton* principle, the error may be harmless if the statement's impact

is insignificant in light of the weight of other evidence against the defendant.")).

Finally, Batchelor strenuously objects that the Magistrate Judge failed to consider his

claim that Kelly's performance violated *Strickland* because he failed to object to duplicative

photographs of the victim, Brett Peeples ("Peeples")[2], which graphically depicted his injuries.

Although the Magistrate Judge found that the photographs were properly introduced to show that

Peeples was beaten with a "dangerous weapon," analysis with which this Court agrees, she did

not address Batchelor's claim that Kelly should have objected to the introduction into evidence

of six photographs of Peeples' injuries, when one photograph "would have sufficed." [Doc. No.

68, p. 11]. The Court has reviewed the allegedly duplicative photographs. While there are both

full view photographs of Peeples' injuries and closeups of the individual injuries he suffered, the

Court does not believe that the photographs were unduly duplicative. Thus, the Court cannot say

that Kelly was ineffective for failing to object that the prosecution should have been limited to

one photograph. Additionally, the Court agrees and ADOPTS the Magistrate Judge's conclusion

that, even if Kelly's performance was deficient, his conduct was not prejudicial to Batchelor,

given the magnitude of the evidence against him.

---

[2]The Second Circuit opinion spells the victim's last name "Peoples." *See State v.*
*Batchelor*, 35, 478 (La. App. 2 Cir. 5/10/02); 823 So.2d 367.

4

## C.    Miranda Rights

As his fourth claim, Batchelor argues that his Miranda rights were violated. Batchelor failed to raise this issue on appeal, and the state courts refused to consider it in his post-conviction filings under Louisiana Code of Criminal Procedure article 930.4(C), which provides: "If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief." Thus, the Court agrees with the Magistrate Judge that the state courts clearly relied on an independent state law ground for their decision.

Batchelor bore the burden of showing that the state did not strictly or regularly follow the procedural bar of article 930.4(C) as to Miranda claims, and the Magistrate Judge concluded that he failed to meet his burden. He cited several cases, but this Court agrees with the Magistrate Judge that only one case appears similar to this case. *State v. White*, 606 So.2d 787, 788 (La. 1992). In that case, the only analysis and procedural history we have is from the final action by the Louisiana Supreme Court on White's post-conviction application. In ruling in his favor, the Supreme Court recounted the following history from the case:

> Because the waiver issue was not considered on White's direct appeal, this court granted White's application for supervisory writs and remanded to the trial court for an evidentiary hearing on the waiver of his Miranda rights. *State ex rel White v. State*, 566 So.2d 965 (La.1990). After a hearing, the trial court denied post-conviction relief and a divided court of appeal denied a writ. This court then granted a writ to review the question of whether White made a valid waiver of his Miranda rights. 597 So.2d 1016 (La. 1992).

*Id.* at 788. Unfortunately, the Louisiana Supreme Court did not clarify for the reader whether the court meant (1) that the appellate and/or trial court had not considered the Miranda issue when that issue had been raised in White's direct appeal **or** (2) that it remanded for the appellate and/or district court to consider the Miranda issue, even though it had not been raised in White's direct

5

appeal. The fact that an issue has not been "considered" by a court does not mean that it was not "raised." The Court agrees with and ADOPTS the Magistrate Judge's conclusion that Batchelor failed to show that the State "did not strictly or regularly follow a procedural bar around the time of his direct appeal." Neither the procedural history nor statements in the case itself show that the Louisiana Supreme Court clearly and unequivocally excused White's procedural default. *See Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997). Additionally, the Court ADOPTS the Magistrate Judge's conclusion that, even if Batchelor's confession was improperly admitted, he suffered no prejudice as a result of the admission, given the significant evidence against him.

### D. Denial of Right of Self-Representation under *Faretta*

As his fifth claim, Batchelor contends that he was denied his right to self-representation under *Faretta v. California*, 422 U.S. 806 (1975). Batchelor filed two *pro se* motions to represent himself, which the Magistrate Judge addressed separately. With regard to the first motion, she noted that the Louisiana Second Circuit relegated its consideration to a footnote and "in essence" found that Batchelor had abandoned his right to self-representation. [Doc. No. 65, p. 27]. The Magistrate Judge concluded that "Batchelor's apparent unwillingness to argue his motion when given the opportunity to do so, in conjunction with his statement at this attempted arraignment that he did not wish to plea 'unless [he] ha[d] presence of counsel,' reasonably signaled that Batchelor had 'abandoned his initial request to represent himself.'"
[Doc. No. 65, p. 30 (quoting *Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir. 1982)). Alternatively, if Batchelor's signals were "mixed," she found that these mixed signals were sufficient to constitute abandonment of his motion for self-representation. Because she determined that he abandoned his first motion, the Magistrate Judge concluded that the district court was not required to conduct a full *Faretta* hearing, and the Second Circuit "did not

6

unreasonably apply *Faretta* and its progeny" in affirming his conviction. [Doc. No. 65, p. 30].

With regard to the second motion, the Magistrate Judge concluded that the Second Circuit "was clearly entitled to find that Batchelor's second motion to [proceed pro se] was untimely, and hence a 'dilatory tactic,' because Batchelor filed the motion on the first day of trial. [Doc. No. 65, p. 31]. Thus, she found that the Second Circuit's ruling "was not an unreasonable application of federal law." [Doc. No. 65, p. 31].

In addition to the dilatory nature of the filing, the Magistrate Judge concluded that the Second Circuit "was also entitled to find that Batchelor waived his right to self-representation during the November 27, 2000 hearing." [Doc. No. 65, p. 31]. Although Batchelor's attorney, Kelly, stated that Batchelor's family intended to hire another attorney, Batchelor did not correct Kelly, nor did Batchelor attempt to argue the merits of his motion for self-representation in any way.

The Court DECLINES TO ADOPT the Magistrate Judge's analysis of this claim in the Report and Recommendation. A federal court cannot grant habeas relief "to a prisoner serving a state sentence with respect to any claim adjudicated on the merits in a state court unless the state court ruling 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Gross v. Cooper*, 2009 WL 528240, at *3, 312 Fed.Appx. 671 (5th Cir. Mar. 3, 2009) (quoting 28 U.S.C. § 2254(d)(1)).

> A state decision is "contrary to" clearly established federal law if the state court applies a rule that is "substantially different from" or "contradicts" governing Supreme Court precedent, or if the state court reaches a decision opposite that reached by the Supreme Court on a set of materially indistinguishable facts. . . A decision involves an "unreasonable application" of federal law if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." . . . An "unreasonable application" of

7

federal law must be something more than a mere incorrect application.

*Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 405, 407-08 (2000)). Additionally, "the state

court's findings of fact are entitled to a presumption of correctness that can be rebutted only by

clear and convincing evidence." *Id.* (citing 28 U.S.C. § 2254(e)(1)).

The Court has carefully considered the record in this matter and finds that the state

court's ruling on Batchelor's *Faretta* claim involved an unreasonable application of clearly

established Federal law. The Court agrees with the analysis of then-Chief Judge William Norris

in his dissent in *State v. Batchelor*, No. 35,478 (La. App. 2 Cir. 05/10/02); 823 So.2d 367:

> . . . Any fair reading of this record shows that Marshall Batchelor clearly
> and unequivocally requested the right to represent himself at trial, a right
> guaranteed by *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562
> (1975).
>
> Although the majority relegates this to a footnote, I consider it significant
> that Batchelor filed his first written motion to dismiss counsel and represent
> himself on October 14, 1999. R.p. 114. Since his trial date was still some five
> months hence, this filing cannot be viewed as a dilatory tactic. The motion states,
> *in extenso*:
>
>> Now comes the pro se litigant Marshal T. Batchelor into
>> Court to file the above captioned motion pertaining to the above
>> enumerated matters. The defendant moves this Honorable Court to
>> dismiss counsel for the following reasons hereinafter set forth:
>>
>> (1).
>> Pursuant to *Faretta v. The State of California*, a Supreme
>> Court Decision, the defendant has a Constitutional right to
>> represent himself.
>>
>> (2).
>> Defendant avers that his request to dismiss counsel is being
>> made with sound-mind with his eyes opened.

8

(3).

Counsel has failed to file necessary pleadings such as a writ of Habeas Corpus and Applications for a Writ of Review to secure the defendant's release in this matter. Had counsel filed such aforementioned pleadings, the defendant could have been released without bond obligation. Instead, counsel has deliberately denied the defendant access to Court by depriving the defendant of the files that he received from the Clerk's office on the defendant's pro se Application for a Writ of Habeas Corpus. Therefore counsel has provided the defendant with ineffective assistance and caused unnecessarily prolonged incarceration upon the defendant.

Wherefore, the defendant prays that this Honorable Court deem his Reasons good and sufficient to grant the foregoing motion, or show just cause for not doing so.

Defendant further prays that this Honorable Court allow him to proceed pro se in this matter with standby counsel only.

Defendant finally prays that this Honorable Court direct the clerk to provide all parties to these proceedings with a certified copy of this Rule or show just cause for not doing so.

Done and signed this 13th day of October, 1999. . .

This request is neither latent, tentative nor incidental to any other demands. It forms the entirety of his request for relief.

While the majority correctly notes that Batchelor made a court appearance on October 14, the transcript plainly discloses that the court did not address the motion filed that date. Instead, Batchelor appeared without counsel and the court asked him to enter a plea. Batchelor declined to do so without "a presence of counsel." I do not consider this inconsistent with the relief he sought in his motion, since the motion had obviously not been addressed.

Batchelor's motion was not heard in court until February 7, 2000. In my view, the District Court conducted no inquiry-let alone an adequate one-into whether Batchelor was competent to waive counsel. Counsel advised the court that, in his view, the defendant "has a right to represent himself," and suggested that he be appointed as "standby counsel" for Batchelor during the proceedings. The prosecutor argued against this arrangement, complaining that "if we allow defendants to start filing these pro se motions every time they become upset with their attorney, we would never get anything done." The court stated that it

9

understood Batchelor's desire to represent himself with standby counsel, but denied the motion with no further explanation; counsel objected. The entire colloquy occupies a mere three transcript pages.

On the first day of trial, November 27, 2000, the court held a hearing on defense counsel's motion to appoint counsel and on Batchelor's pro se motion to quash. At this hearing, the court allowed defense counsel and the prosecutor to question Batchelor as to his motives for filing a complaint with the State Bar Association against his appointed counsel. Defense counsel acknowledged that it was an irritation to be in an adversarial position with his own client. The court denied the defense counsel's request for co-counsel or substitute counsel on the basis that it would "create problems" for the substitute attorney. Defense counsel raised theories of ineffective assistance and potential conflict of interest. There was never any discussion of Batchelor's right of self-representation.

Batchelor reiterated his right of self-representation by written motion filed on November 29, 2000, which is nearly identical to the first motion.

Unlike the majority, I am perplexed by the District Court's minute notation that the motion of November 29 was "already ruled on 11/27/00 by the court." In my experience, courts do not hold hearings on motions not yet filed. The November 27 hearing addressed counsel's motion to appoint counsel. By contrast, Batchelor's November 29 motion never received a hearing of any kind and has not been ruled on by the trial court.

At this late date, we can no longer debate the guiding principle that every accused has the right to choose between the right to counsel and the right of self-representation. *State v. Strain*, 585 So.2d 540 (La.1991); *State v. Bridgewater*, 00-1529 (La.1/15/02), 823 So.2d 877, modified on rehearing on other grounds 00-1529 (La.6/21/02), 823 So.2d at 909. When the accused asserts this right unequivocally, the court must determine whether he is competent to waive counsel and is "voluntarily exercising his informed free will." *State v. Santos*, 99-1897 (La. 9/15/00), 770 So.2d 319.

I make these observations with full cognizance of the brutal and shocking nature of the offenses charged. However, expediency in prosecution must respect the rights of the defendant, no matter how repugnant the crime of which he is accused. *See, United States v. Moussaoui*, 2002 WL 1311738 (E.D.Va. June 14, 2002). In my view, the hearing of February 7, 2000, came nowhere near satisfying the requirements of *Faretta v. California, State v. Strain*, and other applicable jurisprudence.

I cannot subscribe to the majority's conclusion that Batchelor's request

10

> was vague, vacillating or waived. I would find that on two occasions he
> unequivocally asserted his right of self-representation, but that the District Court
> effectively ignored it and made no effort to determine his competency for
> self-representation or the voluntariness of his request. Finally, I would find no
> ruling on the November 29 motion. For these reasons, I would be obligated to
> reverse the conviction and remand the case for further proceedings.

*Batchelor*, 823 So.2d at 378-80 (Norris, J. dissenting).

While this Court, like Judge Norris, recognizes the brutality of the offenses with which

Batchelor was charged, the Court cannot ignore the constitutional rights of the accused. The

Sixth and Fourteenth Amendments protect the right of a criminal defendant to representation by

counsel and to choose to waive representation. Batchelor clearly asserted his right to represent

himself, not once, but twice. It was both an incorrect and unreasonable application of Federal

law for the Second Circuit to find that Batchelor had abandoned his request for self-

representation. The Second Circuit did not analyze his first motion, but relegated discussion of

that motion to a footnote where it suggested that Batchelor had abandoned his request for self-

representation because he did not wish to enter a plea without counsel the day after he filed his

motion, but before it was heard, and because he did not make argument at the hearing on the

motion four months later. Neither Batchelor's attorney, the district attorney, nor the district court

treated the motion as having been abandoned. Batchelor's attorney argued the motion for him

and offered to serve as standby counsel; the district attorney argued against the granting of the

motion; and the district court denied the motion without any inquiry into Batchelor's competency

to waive counsel. Both the district court's failure to conduct the *Faretta* inquiry, and the Second

Circuit's failure to analyze this first motion, but to, in effect, treat the motion as abandoned was

an unreasonable application of Federal law.

On the second occasion, Batchelor informed the district court on November 27, 2000, that he had filed a second motion to represent himself,[3] but the motion was not received by the district court until two days later, after trial had commenced.  On the day it was received, there was some discussion among Batchelor, his counsel, and the district court as to whether the motion had been ruled upon.  When Batchelor agreed that the motion had been ruled upon, the district court erroneously concluded that it had denied this motion at the November 27, 2000, motion hearing.[4] The only ruling on any motion for Batchelor to represent himself was the district court's denial of his first motion at the February 7, 2000 hearing, nine months earlier.  While Batchelor's statements at trial were confusing, Batchelor had made clear and unequivocal demands to represent himself on two different occasions.  Even if his own statements at trial caused confusion to the district court with regard to the second motion, a defendant is not required to "continually renew his request to represent himself even after it is conclusively denied by the trial court."  *Brown v. Wainwright*, 665 F.2d 607, 612 (5th Cir. 1982).  The effect of the district court's actions was to prevent Batchelor from waiving his right to counsel and from exercising his right of self-representation.  Batchelor's rights were violated, and the Second Circuit's determination of this claim as having been abandoned involved an unreasonable application of

---

[3]Batchelor referred to his motion as a "motion to dismiss counsel," R. 1411, but the only motions considered at the November 27, 2000 hearing were a motion to appoint counsel, a *Brady* motion, and a motion to quash.

[4]The Court can only speculate that Batchelor meant to say that the district court had denied this same motion on February 7, 2000, while the district court believed that it had ruled on the motion at the November 27, 2000 hearing.  Regardless of what each speaker believed or meant to say, however, the fact is that the motion for self-representation was urged a second time, and the district court did not conduct a hearing or rule on the motion.

12

clearly established Federal law under *Faretta* and its progeny.[5] Therefore, Batchelor's Petition is GRANTED as to this claim, and his conviction is SET ASIDE.

### E.    Insufficiency of the Evidence

With regard to Batchelor's sixth claim, insufficiency of the evidence, the Court has previously stated in this Ruling that it agrees with and adopts the Magistrate Judge's conclusion that the testimony of witnesses Annie and Theodore McGowan should not have been excluded. Further, the Court agrees with and ADOPTS the Magistrate Judge's conclusion that, even if the testimony of the McGowans was so inconsistent as to suggest perjury, there was no prejudice to Batchelor because the other evidence was clearly sufficient to convict him.

Further, to the extent that Batchelor contends that the evidence was insufficient to convict him of armed robbery versus lesser charges, the Court also agrees with and ADOPTS the Magistrate Judge's analysis and conclusion. While there were some inconsistencies in witness testimony (as is often the case), there was sufficient evidence to find that Batchelor's use of a brick to injure the victim, Peeples, was proximate enough in time to justify the charge of armed robbery.

### II.    CONCLUSION

For the foregoing reasons, the Court ADOPTS IN PART and DECLINES TO ADOPT IN PART the Report and Recommendation of the Magistrate Judge on Batchelor's Petition for Writ of *Habeas Corpus*.

With regard to Batchelor's claim that he was denied the right of self-representation, the

---

[5]Based on the Court's analysis, it need not reach the Second Circuit's determination that Batchelor's second motion was "clearly a dilatory tactic." *Batchelor*, 823 So.2d at 377.

13

Court DECLINES TO ADOPT the Report and Recommendation, and the Petition is conditionally GRANTED as to this claim. Batchelor's conviction is VACATED and SET ASIDE. The State of Louisiana shall release Batchelor from custody based on that conviction unless he is granted a new trial within 120 days of the date of the Court's Ruling and Judgment.

With regard to Batchelor's remaining claims, the Court ADOPTS the Report and Recommendation of the Magistrate Judge, as set forth in this Ruling. His Petition is DENIED as to these claims, and they are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this ___5___ day of _August_ , 2010.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

14